UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

     v.

NATHAN BROWN,

                Defendant.

REPORT & RECOMMENDATION

03-CR-6033L

## PRELIMINARY STATEMENT

By Order of Hon. David G. Larimer, United States District Judge, dated April 14, 2003, all pre-trial matters in the above captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 27).

Defendant Nathan Brown is charged in six counts of a sixteen-count superseding indictment.  The first count charges that between August 2002 and February 2003, Nathan Brown and co-defendants Chad Marks and Richard Ross conspired to possess with intent to distribute and to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846.  Counts Two, Three and Four charge that on February 4, 2003, Brown possessed with intent to distribute 500 grams or more of cocaine (Count 2), in violation of 21 U.S.C. §§ 841(a)(1) and 842(b)(1)(B); fifty grams or more of cocaine base (Count Three), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and a quantity of marijuana (Count Four), in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).  The fifth count of the superseding indictment charges that on the same date, Brown possessed two firearms in furtherance of drug trafficking crimes,

namely, the crimes charged in Counts Two through Four, in violation of 18 U.S.C. §§ 924(c)(1) and 2.  The final count charges that on February 4, 2003, Brown possessed with intent to distribute and distributed fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Docket # 96).

Prior to the return of the Superseding Indictment, Brown filed omnibus motions seeking, *inter alia*, suppression of physical evidence seized from his apartment at 189 Pierpont Street and a red Ford Explorer.  (Docket # 24).  Brown argued that the affidavit offered in support of the search warrant for his apartment and vehicle was unsupported by probable cause.  (Docket # 24).  By Report and Recommendation dated August 15, 2003, this Court recommended the denial of Brown's motion, finding that regardless of whether probable cause had been established, the seized evidence was admissible based upon the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984).  (Docket # 45).  That recommendation was adopted, over Brown's objection, by United States District Judge David G. Larimer on September 10, 2003.  (Docket # 53).

Approximately one year later, the grand jury returned the pending Superseding Indictment against Brown and his co-defendants.  Thereafter, Brown retained new counsel, who has filed additional pretrial motions on his behalf.  (Docket # 175).  Currently before this Court is Brown's renewed motion to suppress all evidence seized as a result of the searches of 189 Pierpont Street and the red Ford Explorer.  In the alternative, Brown requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[1]  (Docket # 175).

---

[1] Brown's renewed omnibus motion also sought, *inter alia*, a bill of particulars, discovery and inspection, *Brady* material, *Jencks* material, rulings on evidentiary matters under Rules 404, 607, 608, 609, and 801(d)(2)(E) of the Federal Rules of Evidence, the preservation of rough notes, notice of exert witnesses, joinder, severance, an

## FACTUAL BACKGROUND

As described more fully in this Court's August 15, 2003 Report and Recommendation (Docket # 45), on February 4, 2003, members of the City of Rochester Police Department executed a search warrant for the upstairs apartment at 189 Pierpont Street and for a red Ford Explorer, bearing New York registration BWS-4900.  The search warrant had been issued by Monroe County Court Judge John Connell and was based upon an affidavit of Officer Theresa A. Dearcop of the Rochester Police Department.  (Docket #24).

In her affidavit, Officer Dearcop described a series of telephone communications intercepted on January 25, 2003, pursuant to a wiretap of co-defendant Chad Marks's cellular telephone.  The first call was placed by Marks to Donald Hoskins.  During the call, Marks appeared to be in the car with another male and asked Hoskins for "Nate's other phone number."  Hoskins, after apparently retrieving the number, called Marks's cellular telephone and provided the number (585) 576-3677.  That number was later determined to be listed to an address associated with Brown.  Upon receiving the telephone number, Marks called it and asked the individual who answered, "What's it look like," and the male responded, "I'm cool."  Marks then indicated that he was nearby and would "be there in like five minutes."  (Docket # 179, Ex. 2).  Law enforcement had identified Brown as the subscriber for utilities at 189 Pierpont Street.

---

audibility hearing, a conspiracy hearing, suppression of identification testimony, and *in-camera* review of pre-sentence reports for all government witnesses.  (Docket # 178)  Each of these requests was either resolved by the parties or decided in open court by the undersigned on June 16, 2005.  (Docket # 180).

Shortly thereafter, a final telephone call was intercepted in which co-defendant Richard Ross requested that a taxi be dispatched to 196 Pierpont Street.[2]  (Docket # 45).

Four days later, on January 29, 2003, a surveillance team observed a black male exit 189 Pierpont Street, enter a red Ford Explorer registered to Brown, and drive to a parking lot on Electric Avenue.  Once there, the male was observed meeting briefly with the driver of another vehicle before returning to 189 Pierpont Street.  (*Id.*).  Based upon the above, Dearcop opined in her affidavit that Brown was Marks's supplier of cocaine and that it was reasonable to believe that narcotics would be located in Brown's apartment at 189 Pierpont Street and in his vehicle, the red Ford Explorer.  (*Id.*).

## REPORT AND RECOMMENDATION

Brown seeks suppression of all evidence seized pursuant to the searches of his apartment and vehicle.  In his original motion, Brown sought suppression on the grounds that the affidavit submitted by Dearcop in support of her application for the search warrants was insufficient on its face to establish probable cause.  This Court recommended denial of such motion (Docket # 45), finding that regardless of whether the affidavit established probable cause, Brown had not offered any evidence to suggest that the searching officers were not entitled to rely upon the warrant in good faith.  *See United States v. Leon*, 468 U.S. 897 (1984).  Such recommendation was adopted by the District Court on September 10, 2003, based upon application of the *Leon* good faith exception.  (Docket # 53).

---

[2] Although Dearcop's affidavit indicated that Ross's call for the taxi was made over telephone number (585) 576-3677 ("Nate's" telephone number), the government concedes that the call was actually made using Marks's cellular telephone.

In the instant motion, Brown argues that *Leon* should not apply because Dearcop's affidavit contained deliberate misrepresentations, or, at the least, that her conclusions were the product of her reckless disregard for the truth. Thus, according to Brown, suppression of the evidence seized pursuant to the searches of his apartment and vehicle is required because the warrant was unsupported by probable cause and because such defect cannot be overcome by the good faith of the searching officers. Alternatively, Brown requests a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

In *Leon*, 468 U.S. 897, the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective. *Id.* at 918-23; *United States v. Salameh*, 152 F.3d 88, 114 (2d Cir. 1998), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Benedict*, 104 F. Supp. 2d 175, 182 (W.D.N.Y. 2000). The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon*, 468 U.S. at 919.

The Court in *Leon* identified four situations in which the good faith exception is inapplicable. Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

> (1) where the issuing magistrate had been knowingly misled;
>
> (2) where the issuing magistrate wholly abandoned his or her judicial role;
>
> (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and

5

> (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Id.* at 923. *See United States v. Cancelmo*, 64 F.3d 804, 807 (2d Cir. 1995) (citations omitted).

Consistent with the exceptions identified in *Leon*, under the Supreme Court's holding in *Franks v. Delaware*, "a district court may not admit evidence seized pursuant to a warrant if the warrant was based on materially false and misleading information." *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (citing *Franks v. Delaware*, 438 U.S. at 154), *cert. denied*, 507 U.S. 954 (1993). To warrant a *Franks* hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding." *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation omitted). A hearing is required if the defendant provides the court with a sufficient basis upon which to doubt the truth of the affidavit at issue. As explained by the Supreme Court:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171.

A *Franks* hearing is not required where it is sought merely on the basis of an allegation that the information in the search warrant affidavit subsequently proved to be inaccurate. *See United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true'") (quoting *Franks v. Delaware*, 438 U.S. at 165), *cert. denied*, 498 U.S. 866 (1990).

Although not specifically articulated in the following manner, Brown's request for a *Franks* hearing rests upon five challenged misrepresentations by Dearcop. The first, Brown alleges, was Dearcop's opinion that probable cause existed to believe that evidence of narcotics trafficking would be found at 189 Pierpont Street and in the red Ford Explorer. (Docket # 178 at ¶ 181). The second is Dearcop's opinion that "Brown is Chad Marks's cocaine supplier." (*Id.* at ¶¶ 184, 219). Brown's third example of alleged misrepresentations is the purported contradiction between certain factual assertions made by Dearcop in her affidavit relating to physical surveillance and testimony presented during an evidentiary hearing for co-defendant Chad Marks. (*Id.* at ¶¶ 208-14). Fourth, Brown contends that Dearcop was deliberately misleading in asserting in her affidavit that Richard Ross had used Brown's telephone when requesting a taxi, when, in fact, Ross had used Marks's cellular telephone to make the call. (*Id.* at ¶¶ 198-201). Finally, Brown asserts that Dearcop was also misleading in another search warrant affidavit, a fact that is proof of the unreliability of her representations in this affidavit. (*Id.* at ¶¶ 227-29).

**A. Dearcop's Belief that Narcotics were Present:** As an initial matter, Brown challenges the conclusion articulated in Dearcop's affidavit that "[t]here is probable cause to believe that certain property herein described may be found at . . . 189 Pierpont Street upstairs

apartment . . . [and] . . . within . . . a 1996 Ford Explorer, color red . . . ." (Docket # 179, Ex. 2 (Dearcop Aff.) At ¶ 4). According to Brown, because the evidence against him was so obviously lacking, Dearcop's conclusion could only have been a deliberate and material falsehood. (Docket # 178 at ¶¶ 181-82).

Brown's argument essentially amounts to a challenge that the warrant lacked probable cause. As already mentioned, that argument has been rejected by the District Court in this matter and cannot be raised again now. Brown has failed to offer any evidence suggesting that Dearcop deliberately or even recklessly misled the court. Rather, Brown merely presumes that in view of his perceived weaknesses in the government's evidence, Dearcop must have intentionally misled the Court with her opinion. Such an assumption, however, is insufficient to satisfy Brown's burden of demonstrating the need for a *Franks* hearing. It is therefore this Court's recommendation to deny Brown's motion insofar as it is based upon Dearcop's conclusions that probable cause existed for the search. *See Franks*, 438 U.S. at 171.

B. **Dearcop's Opinion that Brown was Marks's Supplier:** Brown's second challenge is similar to the first, but relates specifically to the opinion in Dearcop's affidavit that she believed that Brown was Marks's supplier of cocaine. (Dearcop Aff. at ¶ 9). Brown avers that such statement was deliberately false and misleading because it was unsupported by the evidence. (Docket # 178 at ¶ 219). This Court disagrees.

Paragraph Nine of Dearcop's affidavit reads in its entirety:

> On January 25, 2003 four phone calls were made in succession of one another. At approximately 7:06 p.m. an outgoing telephone call was intercepted from Chad Marks' cellular telephone (585) 576-5564 to the cellular telephone of Donald Hoskins (585) 615-9439, call number 301. The conversation was between Chad Marks and Donald Hoskins. In sum

and substance Marks asked Hoskins for Nate's other phone number because the other one was turned off, Hoskins told Marks he would call back with the number. Call number 302 was received at approximately 7:07 p.m., Donald Hoskins made an incoming call from (585) 615-9439 to Mark's cellular telephone, (585) 576-5564. In sum and substance Hoskins gave Marks the telephone number 576-3677. An outgoing call #303 was made from Chad Marks cellular telephone (585) 576-5564 to (585) 576-3677 at approximately 7:08 p.m., the phone is listed in Sprint Spectrum LP records to Lee Davis at 131 Orange St. In sum and substance Marks was talking to the person driving the vehicle while the telephone was ringing. Marks stated we'll see if his truck is here, make a right not on Kislingberry the next one. A male answered the phone and Marks told this male he was here right now and he had his man with him. Marks asked what it looks like and the male responded I'm cool and Marks told this male he would be there in five minutes. Marks placed an outgoing call #304 from (585) 576-5564 to (585) 576-3677 at approximately 7:11 p.m. Marks told the person on the other end of the phone he was here now. At approximately 7:12 p.m. an outgoing call #305 was made from (585) 576-3677 to Associate cab company (586) 546-3333 asking for a cab at 196 Pierpont St, the call was made by Rich Ross Jr. A surveillance team observed the Red Ford Explorer BWS-4900 leaving the front of 187 Pierpont St with a male black driver. On November 13, 2002 Rochester Police Officer B. Klawitter completed a Field Interview Form identifying Nathan Brown of 131 Orange Street with a Red Ford Explorer New York Registration BWS-4900. On January 29, 2003 surveillance teams watched a male black leave 187/189 Pierpont Street and enter the driver side of the red Ford Explorer BWS-4900 as it was parked in the driveway of 187/189 Pierpont St on the Kislingberry side. The Explorer went to the area of 107 Electric Avenue and the male black diver exited the vehicle and entered the passenger side of an occupied parked vehicle and both occupants were seen looking at unknown objects. The male black returned the red Ford Explorer BWS-4900 and returned to 187/189 Pierpont Street approximately ten minutes later. On January 30, 2003 the surveillance team observed the red Ford Explorer parked in the rear of 187/189 Pierpont Street. An RG&E check shows the subscriber of 189 Pierpont Street upstairs apartment to be Nathan Brown 11-18-78. A NYSPIN File 15 record on Nathan Brown DOB 11-18-78 has prior felony drug arrests. On May 5, 1997 Brown was arrested for Criminal Sale of a Controlled Substance in the Third Degree. On September 30, 1998 Brown was arrested for Criminal Possession of a Controlled Substance in the Third Degree (two counts). On December 6, 2001 Brown was arrested for Criminal Possession of a Controlled Substance in the Fourth Degree and Criminal Possession of Marijuana in the Fifth Degree.

> Based upon your affiant's training, experience and knowledge of this investigation it is you affiant's opinion that these calls, the surveillance and criminal history demonstrates that Nathan Brown is Chad Marks cocaine supplier. It is you affiant's opinion that Nathan Brown stores cocaine, proceeds from selling cocaine and records related to the trafficking of cocaine at his house, 189 Pierpont Street upstairs apartment.

(Dearcop Aff. ¶ 9).

Brown argues that either suppression or a *Franks* hearing is warranted based upon Dearcop's opinion that he was Marks's supplier of cocaine. According to Brown, that statement was deliberately or recklessly false because, as Dearcop knew, it was unsupported by any evidence. To the contrary, I find that Dearcop's affidavit clearly sets forth the evidence upon which her opinion was based. Dearcop did not simply state her opinion that Brown was a narcotics supplier and then ask the court to accept such opinion; nor did she hide or obscure the bases for her opinion. Rather, Dearcop explained that her opinion was based upon specific intercepted communications, surveillance and Brown's criminal history, each of which was described in the affidavit. (Dearcop Aff. at ¶ 9). For instance, Dearcop outlined intercepted calls in which Marks asked for "Nate's" telephone number, called the number provided, and arranged a meeting. During their conversations, Marks asked Nate, "What's it look like," to which Nate responds, "I'm cool." (*Id.*). Following the meeting, another call was made using the same cellular telephone to request a taxi in the area of Brown's residence. Dearcop also detailed surveillance of a car associated with Brown, and disclosed Brown's criminal history. On this record, it cannot be said that Dearcop's conclusion that Brown was Marks's supplier was a deliberate or reckless attempt to mislead the court. In any event, to the extent that he thought it

necessary, Judge Connell was free to credit or reject her opinion by evaluating the soundness of her opinion, the bases of which were plainly disclosed.

Brown also argues that the falsity of Dearcop's opinion is evidenced by the fact that, despite the breadth of the investigation into Mark's activities, Brown's name was not identified prior to the warrant applications. This argument is equally unavailing. Brown acknowledges that multiple pen register applications submitted in December 2002 (two months before Dearcop's affidavit) allege that Marks "buys his cocaine from an unknown black male named Nate." (Docket # 178, Ex. A). Although "Nate's" last name was not given in those applications, nor was Brown referenced in subsequent wiretap applications submitted by Dearcop, these facts alone do not constitute an adequate preliminary showing that Dearcop's opinion that Brown was a narcotics supplier for Marks was deliberately or recklessly false.

For these reasons, it is my recommendation that Brown's motion for suppression or for a *Franks* hearing based upon Dearcop's conclusion that he was Marks's supplier of cocaine be denied.

### C. Inconsistencies between Dearcop's Affidavit and Hearing Testimony:

Brown also argues that material inconsistencies exist between Dearcop's affidavit and the subsequent testimony offered by Rochester Police Sergeant Brett Sobieraski at the suppression hearing for co-defendant Chad Marks. According to Brown, these inconsistencies demonstrate that Dearcop made deliberate misrepresentations in her affidavit.

Specifically, Brown refers to Dearcop's description in her affidavit of surveillance conducted on January 29, 2003. According to the affidavit, on that date, an unknown black male was seen leaving 189 Pierpont Street and driving a red Ford Explorer to the area of 107 Electric

Avenue. (Docket # 178 at ¶ 209; Dearcop Aff. at ¶ 9). Once there, Dearcop affirmed, the male left the Explorer, entered the passenger side of an occupied parked vehicle and the occupants were seen looking at unknown objects. The male then returned to the red Explorer and drove back to 189 Pierpont Street. (Dearcop Aff. ¶ 9). Brown states that the falsity of Dearcop's description of the surveillance is demonstrated by the contradictory testimony provided by Sobieraski at a pretrial hearing in this case. (Docket # 178 at ¶ 210).

Brown's argument is easily rejected upon review of the transcript pages Brown cites. On those pages, Sobieraski described surveillance of Marks driving a black Jeep Cherokee and meeting with an individual in a red Explorer on Lake Avenue. According to Sobieraski, Marks (not Brown) got out of his vehicle, walked to the Explorer, met with the driver and then returned to his own vehicle. (Docket # 136 at 102, 131, 140). This event, however, which was the subject of Sobieraski's testimony, occurred on February 4, 2003, *six days after* the meeting described in Dearcop's affidavit. Thus, the description provided by Sobieraski during the suppression hearing – which is a different event entirely from the one described in the affidavit – in no way detracts from the credibility of Dearcop's description of the earlier surveillance in her affidavit.

**D. Excluded Conversation:** Brown also urges the Court to review a separate search warrant affidavit submitted by Dearcop in support of an application to search Chad Marks's Jeep. (Docket # 178 at ¶ 226). That affidavit allegedly references an intercepted conversation in which Marks instructed Brown "to park behind his car because he had to go upstairs to get it." According to Brown, Dearcop's description of the conversation in the affidavit was inaccurate and materially false.

12

As Brown acknowledges, however, this conversation was not referenced in Dearcop's affidavit at issue in this case (for Brown's residence and vehicle). Thus, even if Dearcop's description of that conversation was inaccurate, it could not possibly have misled Judge Connell concerning the search of 184 Pierpont Street and the red Explorer.[3] It is therefore my recommendation that Brown's motion for suppression or for a *Franks* hearing on this basis be denied.

**E. Misrepresentation of Telephone Number:** In his final claim, Brown argues that Dearcop's affidavit was intentionally misleading because it indicated that his cellular telephone was used to call for a taxi after an apparent meeting with Marks on January 25, 2003. (Docket # 178 at ¶ 201).

Dearcop's affidavit described a final intercepted communication that occurred after an apparent meeting at Brown's residence. According to the affidavit, the call was placed by co-defendant Richard Ross from telephone number (585) 576-3677, which was registered to an address associated with Brown. The government acknowledges that Dearcop referenced the wrong telephone number and should have disclosed that the call was placed from Marks's cellular telephone, which was the only target of the wiretap. I find that this error neither warrants suppression or a *Franks* hearing. The call was discussed in Dearcop's affidavit following a description of four earlier intercepted telephone calls, each of which was intercepted over Marks's cellular telephone (number 576-5564). Brown's argument that Dearcop intentionally tried to mislead Judge Connell by referencing the wrong telephone number is undercut by the fact

---

[3] Brown does not argue that the accurate transcription of the conversation was somehow exculpatory and that its omission from the affidavit was deliberate and material.

that the transcript of the intercepted communication was attached to the affidavit. That transcript correctly identified that the intercepted call to the Associated Cab Company was made from Marks's cellular telephone.

Brown has failed to offer any evidence to suggest that Dearcop's error was anything more than a mistake. It is therefore my recommendation that Brown's motion be denied on this basis as well.

## CONCLUSION

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress tangible evidence or, alternatively, for a *Franks* hearing **(Docket # 178)** be **DENIED**.

                                         *s/Marian W. Payson*
                                         MARIAN W. PAYSON
                                   United States Magistrate Judge

Dated: Rochester, New York
       July 22, 2005.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[4]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                          *s/Marian W. Payson*
                           MARIAN W. PAYSON
                          United States Magistrate Judge

Dated: Rochester, New York
      July 22, 2005.

---

[4] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(F) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed.  *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).